CORNET and ZEIBIG, Appellants, v. BOYLE, Respondent.

St. Louis Court of Appeals, January 30, 1906.

**MONEY HAD AND RECEIVED: Vendor and Purchaser.** A vendor of real estate deposited a sum of money with the purchasers to pay certain taxes upon the lands sold which were not payable at the time of the sale. The purchasers immediately sold to another purchaser and deposited the same sum of money with the second purchaser's agent under a written contract that the money was so deposited to guaranty the payment of the said taxes, and a deed was made directly from the first vendor to the second purchaser. The second purchaser sold to a third, turning the money over to the latter for the same purpose. Subsequently the first vendor paid the taxes on their falling due; the first purchasers then reimbursed the first vendor. *Held* the first purchasers could recover the amount from the agent of the second purchaser under the contract, as for money had and received.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED (*with directions*).

*E. C. Slevin* for appellants.

*John Boyle* for respondent.

STATEMENT.—The suit is for money had and received. A jury being waived, the trial was had before the court, who found the issues for the defendant. Plaintiffs have appealed here. The facts out of which the controversy grew are as follows. About July, 1899, Kaime

& Company, real estate agents, representing Mrs. Addison in the sale of certain valuable real property, situated on Olive near Sixteenth street, in the city of St. Louis, negotiated a sale thereof to Cornet & Zeibig, and before the sale was consummated by the execution of the deed of conveyance, Cornet & Zeibig negotiated the sale of the same property to one Thomas T. Lingo, who was represented in the transaction by defendant Boyle, also a real estate agent. It appears that the taxes for 1899 were then assessed against the property and in amount, they aggregated about $144.30. Inasmuch as the tax-bills were not then made out and for that reason the taxes could not be paid, the purchasers, Cornet & Zeibig, not having sufficient knowledge of the financial responsibility of the grantor, Mrs. Addison, insisted upon and required her to make a deposit of the sum of $144.30, presumably the amount of such taxes, as a collateral guaranty of her covenant against incumbrances in the deed to be delivered that day, and thereupon her agents, Kaime & Co. made such deposit with the purchasers, Cornet & Zeibig, and took a receipt of some sort therefor, which receipt is not in this record. As above stated, on the same day and before the deed was delivered to them, Cornet & Zeibig renegotiated the property to Lingo, who in turn was represented in that transaction by his agent, the present defendant, Boyle, and the deed from Mrs. Addison was executed by her at the instance of all concerned directly to Thos T. Lingo, instead of to the immediate purchasers, Cornet & Zeibig. This deed is not in evidence, but it appears from the admissions on both sides that it contained the usual covenant against incumbrances, etc. In truth, this entire controversy rests upon the fact that Mrs. Addison's deed contained that covenant. Thos. T. Lingo, the grantee in Mrs. Addison's deed, was not satisfied with the covenant in the deed against incumbrances without further security in that behalf, therefore he, through his agent Boyle, made a like requirement of Cornet & Zeibig as to a deposit of the

amount of the taxes, $144.30. Therefore and thereupon at the time of the delivery of the deed by Mrs. Addison to Boyle's principal, Lingo, Cornet & Zeibig turned over to him Boyle, as agent for Lingo, the same amount of money which they had received from Mrs. Addison's agents, Kaime & Co. The arrangement whereby the money was placed in the hand of Lingo's agent, Boyle, by Cornet & Zeibig, was reduced to writing by the parties at the time, and is in words and figures as follows:

"Whereas, by a certain warranty deed from Clara Gantt Addison and Murray Addison, her husband, to Thomas T. Lingo, dated July 15, 1899, conveying property in block number 512, containing a front of twenty feet (20) on the north line of Olive street by a depth northwardly of one hundred, six feet, four inches (106, 4) the west line being forty feet (40) east of Sixteenth street, said grantors have conveyed and warranted against the taxes for the year 1899.

"And whereas said tax bills are not ready for payment and said taxes cannot be paid at this date, and whereas said Lingo insists that the amount of said taxes, to-wit, $144.30, should be retained by a third party to guarantee the payment of said taxes when payable within the time specified by law, and whereas said grantors have agreed and did consent and did deposit with Cornet & Zeibig the amount of said taxes, $144.30, for the purposes above mentioned.

"And whereas said Cornet & Zeibig gave a receipt to said grantors for said amount, and guaranteed them against any claims for damages by reason of the covenants, and warranty contained in their said deed, and whereas, said Cornet & Zeibig have further paid to Richard A. Boyle, as agent for said Thomas T. Lingo, the amount of said taxes, $144.30.

"Now, therefore, said Richard A. Boyle, hereby for himself, administrators and assigns, binds himself, his administrators and assigns that said taxes will be paid, if not, that he will pay the same, and hold harmless said

grantors, their administrators and assigns, and said Cornet & Zeibig, their successors, administrators and assigns, against all claims, and he does hereby guarantee payment of same within the time required by law."

About the same time, Lingo, through his agent, Boyle, sold the property to one Charles M. Hays, and executed to him a deed of conveyance containing the usual covenants, except a special covenant against incumbrances, inasmuch as it was specially provided in such deed that the covenant against incumbrances did not apply to the then current taxes of 1899; in other words, the deed from Lingo to Hays was subject to the taxes of 1899. In order to render this special covenant possible, and in order to induce Hays to accept it subject to said taxes, Boyle, the agent of Lingo, Hays' grantor, turned over to Hays the amount of money, $144.30, which he then held on account of said taxes under the writing above set out. This money Hays accepted from Boyle, Lingo's agent, together with such special covenant in the deed in lieu of the usual covenant against all incumbrances. So much for the several transfers and the final disposition of the fund of $144.30 which is the subject of this controversy.

A few weeks later, when the taxbills were ready for payment, Kaime & Co., acting as agents for Mrs. Addison, the grantor in the deed to Lingo, paid the taxes on the property in accordance with the covenant in Mrs. Addison's deed and called upon the parties to whom in fact they had sold, but to whom they had not executed the deed; that is, Cornet & Zeibig, produced the receipt showing the payment by them of such taxes, and demanded the said $144.30 theretofore deposited by them, and·Cornet & Zeibig, repaid the same. Thereupon these plaintiffs, Cornet & Zeibig, called upon this defendant, Boyle, Lingo's agent, to refund to them the same amount. Boyle demurred, saying that his principal, Lingo, had sold the property to Hays, subject to the taxes, and had

116 App—28

paid the money to him to cover the same. For this reason he declined to reimburse the plaintiffs. It further appears that Hays was quite wealthy, owning large properties in St. Louis, and that he afterwards called upon the Collector in the month of December and within the time allowed by law to pay such taxes, and found that the same had been paid. It also appears that Boyle, through an intermediary, after learning that the taxes had been paid by Kaime & Co. and in order to help Cornet & Zeibig out of the difficulty, endeavored to induce Hays to refund the money which had been turned over to him for that purpose but he declined to do so, maintaining that some one had volunteered to pay his taxes for him and he would not reimburse them. Upon this state of facts, suit was instituted by Cornet & Zeibig against Boyle as for money had and received, seeking to recover from Boyle the amount of money they had refunded to Kaime & Co. for Mrs. Addison.

The court refused all of the instructions requested on either side and it will therefore serve no good purpose to encumber the opinion with them. After hearing the case, the court took the matter under advisement for a few days and then found the issues and entered judgment for the defendant. There is no controverted question of fact in the record, and inasmuch as the court, by its refusal of instructions, repudiated the views of the law presented by counsel on either side, it is difficult indeed to discover from the record just what opinion the learned trial judge entertained.

NORTONI, J. (after stating the facts)—1 It becomes the duty of the court to construe the writing, and to do this intelligently, we must first inquire its purpose. It is patent that Lingo, the grantee under the deed from Mrs. Addison, was not satisfied with the covenant therein against incumbrances, in view of the fact that the property then stood incumbered with the current taxes to the amount of $144.30, which was not then susceptible

of discharge for the reason stated. He therefore required a further security collateral to that covenant, to the end that he should be secure from any possible failure of Mrs. Addison to discharge the incumbrance. We reach this conclusion from the plain wording of the instrument, to-wit: "And whereas said taxbills are not ready for payment and said taxes cannot be paid at this date, and whereas said Lingo insists that the amount of said taxes, to-wit, $144.30, should be retained by a third party to *guarantee* the payment of said taxes when payable within the time specified by law," etc. The purpose then was to *"guarantee the payment"* of this amount that Mrs. Addison's fund was deposited to guarantee the payment of Mrs. Addison's debt. The debt was not thereby paid but it remained a valid and subsisting obligation against Mrs. Addison for the payment of which she was liable. In the event she failed to discharge it within the time specified by law, the fund on deposit should be used for that purpose to the end that Lingo, the grantee, should be held harmless.

This was the state of facts within the contemplation of the parties at the time Cornet & Zeibig turned the guarantee fund over to Boyle upon receipt of which Boyle obligated himself, shorn of all unnecessary verbiage, as following: "Now therefore, said Richard A. Boyle hereby . . . binds himself . . . that said taxes will be paid, if not, that he will pay the same and hold harmless said grantors . . . Cornet & Zeibig . . . against all claims, costs or damages against said taxes for 1899 on said property and he does hereby guarantee payment of same within the time required by law." Now the question is, for whom did Boyle guarantee upon accepting the fund? He must be understood to have guaranteed that Mrs. Addison would pay the taxes within the time required by law and in event she failed to do so, he would discharge the same with the guarantee fund belonging to her then in his hands and hold harmless the grantor, Mrs. Addison, and Cornet & Zeibig, from

further responsibility thereon. This must be true for the reason that the debt about which the contract was executed and collateral to which the deposit was made, was the debt of Mrs. Addison and the moneys were her moneys and Mrs. Addison deposited the collateral thereto as a guarantee therefor. He could not have undertaken to stand good for the debt as a debt of Lingo or Hays or of himself, for the obligation to pay rested upon neither one of these parties at the time of the execution of the contract under consideration. But being the debt of Mrs. Addison, it was not only her right, but the obligation rested upon her as well to discharge the same and upon discharging the debt to which the fund was held as collateral, she was of course entitled to the return of the collateral. The deposit having been made in the first instance by Mrs. Addison with Cornet & Zeibig, there was privity between them and it was proper for her to apply to those with whom she had deposited the collateral to recover the same. And it was proper conduct on the part of Cornet & Zeibig to promptly repay, as they did; the taxes having been paid by Mrs. Addison within the time required by law prior to December 31st. [Sec. 9225, R. S. 1899.] The principal debt for which Boyle held the fund as collateral was thereby extinguished within the time specified and Boyle should have forthwith returned to Cornet & Zeibig the collateral held by him. There was privity existing between Cornet & Zeibig and Boyle and it was proper for them to exhibit the tax receipts and demand the return of the money from Boyle and Boyle should have forthwith refunded, as Cornet & Zeibig had done. Boyle acted at his own risk in turning the fund over to Hays. No authority is found in the writing therefor and if loss occurs to him on account thereof, it should fall where it belongs, not on Cornet & Zeibig who are innocent and injured parties. There is privity existing between Boyle and Hays and Boyle should proceed to call him to account for his conduct in the matter which is indeed reprehensible.

Entertaining these views, the judgment of the trial court will be reversed and the cause remanded with directions to the circuit court to enter judgment in favor of the appellants for $144.30 together with interest at the rate of six per cent per annum from the date of the filing of this suit before the justice. It is so ordered. *Bland, P. J.* and *Goode, J.,* concur.